IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HARWICK CHYA ABRAM,
*Plaintiff*,

v.                                          Civil Action No. ELH-20-756

AEROTEK, INC.,
*Defendant*.

**MEMORANDUM OPINION**

Harwick Abram, the self-represented plaintiff, filed an employment discrimination action against defendant Aerotek, Inc. ("Aerotek"). *See* ECF 3 (the "Complaint"). [1] Ms. Abram, a Black woman, initially applied for employment with Aerotek on April 9, 2015. *Id.* ¶ 13. According to Ms. Abram, "[d]uring all times relevant [to] this action Defendant Aerotek . . . continuously engaged in staffing or employment agency industry." *Id.* ¶ 7. Plaintiff

The Complaint contains three counts, all founded on 42 U.S.C. § 1981. Plaintiff alleges that she was subjected to discrimination on the basis of race (Count 1) and national origin (Count 2) and was also subjected to retaliation (Count 3). *See* ECF 3 at 1, 8-10. Two exhibits are appended to the Complaint. ECF 3 at 13-17.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant has moved to dismiss the Complaint (ECF 10), supported by a memorandum of law. ECF 10-1 (collectively, the "Motion"). Aerotek contends that 42 U.S.C. § 1658 supplies the applicable statute of limitations, and that the four-year

---

[1] Plaintiff filed suit in the Circuit Court for Howard County on January 13, 2020. *See* ECF 1 ("Notice of Removal"). Aerotek timely removed the case to this Court on the basis of federal question jurisdiction, under 28 U.S.C. § 1331. *Id.*; *see also* ECF 19 ("Order Denying Motion to Remand"). On April 13, 2020, I issued an Order (ECF 19) denying plaintiff's motion to remand (ECF 15).

limitations period expired before plaintiff filed suit.  ECF 10-1.  Plaintiff's opposition is docketed at ECF 13.  Defendant has replied.  ECF 17.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.      Background[2]

Plaintiff refers to herself as Black.  ECF 3, ¶ 5.  Further, plaintiff alleges that her "resume exhibits [that she] graduated from a historically black university Bethune-Cookman College/University."  *Id.* ¶ 11.  She asserts that this "denote[s] association with the race black or African Americans or black culture and African American traditions."  *Id.* ¶ 59.  As to additional details of plaintiff's educational attainment, the Complaint states, *id.* ¶ 10:

> Plaintiff['s] resume indicate[s] higher education Bachelor of Science degree Business Administration specialization 1993, Master of Business Administration (MBA) degree with Specialization in Finance 2002, doctoral-level pursuit Doctor of Philosophy (PhD) as well Human Resources Management Certificate (HRM).

Moreover, Ms. Abram alleges that her "resume exhibits finance sector and retail management sector work place experience."  *Id.* ¶ 13.

The Complaint does not provide a clear chronology of Ms. Abram's interactions or associations with Aerotek.  Although the Complaint is confusing, it does not appear that plaintiff ever worked for Aerotek.  Rather, on March 13, 2015, plaintiff applied to Aerotek for a position titled "Direct Placement Credit Analyst."  *Id.* ¶ 22.  Thereafter, on March 26, 2015, plaintiff allegedly applied for two other positions with the same title.  *Id.*  The Complaint provides a

---

[2] Given the posture of this case, I must assume the truth of the facts alleged in the suit, as discussed *infra*.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Complaint or Motion "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"position" and "job id." number for each of the three positions and refers to them as "Defendant positions in question[.]" *Id.*

Then, on April 9, 2015, Ms. Abram "completed and signed Defendant new hire application contract package." *Id.* ¶ 13. On the same date, Ms. Abram "arrived regarding in person Interview with Margaret Broderick, a "white female interviewer." *Id.* ¶¶ 17, 19. Plaintiff alleges that "Marlon Barton, black male, interfered with in person Interview with Margaret Broderick." *Id.* ¶ 19.[3] Mr. Broderick allegedly "stereotyped Plaintiff race black gender female abilities to complete" the "job tasks" of the three "Direct Placement Credit Analyst" positions for which plaintiff applied. *Id.* ¶ 20. And, Barton stereotyped "Plaintiff [sic] abilities to complete credit analyst job tasks . . . ." *Id.* ¶ 21.

On October 3, 2015, plaintiff applied for two more "Defendant positions in question": "Financial Analyst II" and "Analyst II." *Id.* ¶ 23. The Complaint includes the "position" numbers for both. *Id.*

According to plaintiff, Ms. Broderick and Mr. Barton decided not to select her for the three Credit Analyst positions, *id.* ¶ 33, and "Defendant employee Matthew McGuire, white male," allegedly decided not to select her for the positions of "Financial Analyst II" and "Analyst II." *Id.* ¶¶ 31-32. Indeed, according to plaintiff, defendant did not offer her any of the positions for which she applied. *See id.* ¶¶ 24, 25, 27-29. The Complaint states: "Defendant denied Plaintiff finance and other positions job employment opportunities [sic] from 3.25.15 until 1.13.16." *Id.* ¶ 50.

---

[3] Plaintiff also claims, in one sentence, that Mr. Barton "discriminated on the basis of age of MBA degree acquired in 2002" and "on the basis of age of finance experience[.]" *Id.* ¶ 21. As noted, however, the Complaint's three counts are founded on 42 U.S.C. 1981, which prohibits discrimination on the basis of race, as discussed, *infra.*

In particular, plaintiff asserts: "Defendant never considered Plaintiff for Defendant positions in question" *id.* ¶ 24; "Defendant hired whites" for four of the positions for which plaintiff applied, *see id.* ¶¶ 27, 38-39; "Defendant utilized discriminatory method manner of screening and recruiting" for four of the positions, *id.* ¶ 28; "Defendant selected other individuals less qualified than Plaintiff" for four of the positions, *id.* ¶ 29; and "Defendant asserted" that plaintiff "lack[s] skills necessary" for the Credit Analyst positions. *Id.* ¶ 40.

Plaintiff filed "internal complaint opposing discrimination regarding white employees discriminatory hiring practices from 4.10.15 up until January 2016." *Id.* ¶ 73. Reading the Complaint as a whole, it appears that plaintiff filed multiple complaints. *See id.* ¶¶ 34-36, 73-74. The earliest of these complaints was filed on April 10, 2015. *See id.* ¶ 74. Plaintiff claims that she continued applying for positions after that date, "up until January 2016." *Id.*

Various Aerotek employees allegedly "investigated" the complaints. *See id.* ¶¶ 34, 36, 77; *see also* ¶¶ 35, 76, 78. Ms. Abram identifies these employees by name: Dan Farkus, the "Director of Operations," *id.* ¶¶ 34, 77, and Betty Kernizan, Leshandra Davis,[4] and Tania Tithings, to whom the Complaint refers alternately as employees of "Defendant HR Employee Relations," "Defendant HR," and "Corporate Office Employee Relations HR." *See* ¶¶ 35-37, 76-77.

Moreover, Ms. Abram alleges: "Defendant retaliated channeled denied employment failure to staff Plaintiff . . . ." *Id.* ¶ 75. And, she asserts: "Defendant adverse action retaliation for Plaintiff opposing discrimination." *Id.* ¶ 79. Plaintiff adds that defendant failed "to staff Plaintiff from 4.10.15 up until January 2016." *Id.* The Complaint contains no additional allegations regarding the alleged retaliation.

---

[4] In one instance, the Complaint also refers to "LaShaenda Davis." *See id.* ¶ 77.

On July 14, 2016, Ms. Abram filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* at 16.[5] She listed "Aerotek Staffing" in the field for "Employer, Labor Organization, [or] Employment Agency . . . ." *Id.* And, as to the basis of the claim of discrimination, she checked the boxes for "Race," "National Origin," "Age," "Sex," and "Retaliation." *Id.* Plaintiff identified the earliest date of discrimination as March 25, 2015, and the latest as January 13, 2016. *Id.* In the narrative portion of the Charge, Ms. Abram averred, in full, *id.*:

> I. On numerous occasions, dating back to March 25, 2015 and most recently on January 13, 2016, the above referenced employment agency has failed to consider me or assign me to positions I am qualified to fill. I am aware that Senior Account Recruiting Manager Matthew McGuire has failed to submit my resume for positions and has stated I lacked the qualifications for jobs despite the fact my resume clearly reflects my qualifications, education and work experience. I believe these actions are the result of information derived from my resume. In addition I and others have previously leveled complaints against the agency regarding its questionable policies and procedures.
>
> II. I have been given no explanation for the agency's actions.
>
> III. I believe I have been discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my race (Black), sex (female), and national origin (American), and the Age Discrimination in Employment Act of 1967 (ADEA) because of my age (over 40) regarding hiring.

---

[5] The copy of the Charge attached to the Complaint as an exhibit shows that, at the top of the page, the box for "EEOC" is checked underneath the heading "Charge Presented To:". *Id.* Directly below, however, are the words "Maryland Commission on Civil Rights" followed by "and EEOC." At the bottom of the form, a box states: "I want this charge filed with both the EEOC and the State or local Agency, if any." *Id.* The Complaint does not reference the Charge and is not accompanied by any exhibits showing any action by the Maryland Commission on Civil Rights in the matter. Thus, it is unclear whether Ms. Abram effectively filed the Charge with the MCCR, as well as the EEOC. The difference, however, is not material for present purposes. In the remainder of this opinion, I shall refer only to the Charge filed with the EEOC.

On May 12, 2017, the EEOC issued a Notice of Right to Sue to plaintiff. *Id.* at 14.  It stated that the EEOC was "unable to conclude that the information obtained establishes violations of statutes." *Id.*

This suit followed on January 13, 2020.  ECF 1; ECF 3.

## II.    Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  Of course, a plaintiff need not include "detailed factual

allegations" in order to satisfy Rule 8(a)(2).   *Twombly*, 550 U.S. at 555.   Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam).   But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.   *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).   If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.   *Twombly*, 550 U.S. at 555.   "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.   *Iqbal*, 556 U.S. at 678.   Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."   *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"   *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).   However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010).   "A court decides whether [the pleading] standard is met by separating the legal conclusions from the

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

The exhibits attached to Complaint include Ms. Abram's Charge of Discrimination filed with the EEOC, ECF 3 at 16, and the EEOC's Notice of Right to Sue letter, *id.* at 14. In resolving the Motion, under the principles articulated above, I may consider these materials.

In reviewing the Motion, I am mindful that plaintiff is self-represented. Therefore, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."  *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  Therefore, the court cannot fashion claims for a plaintiff because he is self-represented.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).  As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett*, 775 F.2d at 1278.

### III.    Discussion

### A.

Aerotek argues that the Complaint cannot survive a motion to dismiss under Rule 12(b)(6) because "[i]t is evident on the face of the complaint that Plaintiff's claims are barred by the applicable statute of limitations[]"—namely, the four-year limitations period established by 28 U.S.C. § 1658.  ECF 10-1 at 2.

To identify the applicable statute of limitations, I begin with Ms. Abram's cause of action. As noted, in the Complaint Ms. Abram alleges that defendant's conduct violated 42 U.S.C. § 1981. In relevant part, § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens[.]"   42 U.S.C. § 1981(a).

"Although Section 1981 does not explicitly use the word 'race,' the Supreme Court has construed the statute to ban all racial discrimination in the making of public and private contracts." *Nnadozie v. Genesis Healthcare Corp.*, 730 F. App'x 151, 156 (4th Cir. 2018) (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987)); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination . . . on the basis of race."). Thus, § 1981 bars racial discrimination in the workplace.  *See Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551-52 (4th Cir. 2006).[6]

I agree with defendant that 28 U.S.C. § 1658 supplies the statute of limitations applicable to plaintiff's § 1981 claims.  Section 1658(a) states: "Except as otherwise provided by law, a civil action *arising under* an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." (Emphasis added). *See Dutton v. Montgomery Cty.*, DKC 2008-3504, 2009 WL 2496844, at *3 (D. Md. Aug. 11, 2009) (§ 1658 provides a "catch-all four year statute of limitations" for causes of action falling within the statute's sweep), *aff'd*, 368 F. App'x 362 (4th Cir. 2010).  Although § 1981 was originally enacted before December 1, 1990, *see* 14 Stat. 27, Congress amended § 1981 in the Civil Rights Act of 1991 ("1991 Act"), 105 Stat. 1071, 1071-72, § 101, Pub. L. No. 102-166.  The 1991 Act clarified that § 1981 applied not

---

[6] Although plaintiff's Charge of Discrimination alleged discrimination on the basis of age, sex, race, and national origin, she did not assert claims in the Complaint based on sex or age.

only to discrimination in contract formation, but also to the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369 (2004), is instructive. There, African-American petitioners sued their employer under § 1981, bringing claims for hostile work environment, wrongful termination, and failure to transfer. *Id.* at 372, 383. The Court recognized that § 1981's "make and enforce contracts" provision did not protect workers against "harassing conduct that occurred after the formation of the contract" until the 1991 Act explicitly expanded § 1981 to encompass "termination of contracts, and the enjoyment of all benefits . . . of the contractual relationship." *Id.* at 373 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), *superseded by* 1991 Act). Because the petitioners' causes of action "were made possible by that [1991] Act," the Court held that they "arose under" the 1991 Act and thus were subject to the four-year limitations period specified in 28 U.S.C. § 1658. *Jones*, 541 U.S. at 383.

Ms. Abram's claims arise under the 1991 Act, which amends § 1981. Therefore, the claims are governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658.

The gist of plaintiff's claims of discrimination is that Aerotek employees passed over plaintiff in favor of less qualified white applicants when making certain job selection or hiring decisions. Plaintiff also alleges that she was retaliated against for reporting complaints regarding her application experiences to Aerotek "HR." Like the claims of the *Jones* petitioners, Ms. Abram's claims implicate the right under § 1981 to "the enjoyment of all benefits . . . of the

contractual relationship."[7]  *See Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673-74 (D. Md. 2013) (28 U.S.C. § 1658's statute of limitation applied to § 1981 claims concerning post-contract formation conduct).[8]

## B.

In moving for dismissal based on the bar of limitations, defendant raises an affirmative defense.  As noted, limitations ordinarily is not considered in the context of a motion to dismiss. *Edwards*, 178 F.3d at 243; *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 985 (D. Md. 2002), *aff'd*, 92 F. App'x 933 (4th Cir. 2004).  However, "[w]hen it appears on the face of the complaint that the limitation period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss."  *Miller*, 224 F.Supp.2d at 985; *see Pressley*, 553 F.3d at 336; *Goodman*, 494 F.3d at 464.  In *Pilgrim's Pride Corp.*, 395 F.3d at 474, the Fourth Circuit said: "The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint."

In the Motion, Aerotek asserts that the time bar is evident on the face of the Complaint. Specifically, defendant notes that, according to the Complaint, the most recent violation of § 1981 was on January 13, 2016, exactly four years before suit was filed.  *Id.*  Thus, according to

---

[7] Although the Complaint is thin on detail regarding the nature of the contractual relationship between plaintiff and defendant, for present purposes I take the Complaint to allege that there was a contractual relationship, at least as of April 9, 2015.  As noted, plaintiff asserts that on that date she "completed and signed Defendant new hire application contract package."

[8] Notably, *Sewell* also states that claims founded on § 1981 "are not subject to the same exhaustion . . . requirements as those asserted pursuant to [Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*]."  *Sewell*, 956 F. Supp. 2d at 673 (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291–92 (4th Cir.2004)).

defendant, the Complaint was filed just one day after the expiration of the limitations period. *Id.* In response, the plaintiff states only that she "filed timely . . . ." ECF 13 at 1.

Defendant appears to assume that the clock on the four-year limitations period began to run at least by January 13, 2016, the latest date of unlawful conduct alleged in the EEOC Charge and the Complaint. If so, the Complaint was timely filed. When computing a limitations period under Fed. R. Civ. P. 6(a)(1), the "day of the event that triggers the period" is excluded and the "last day of the period" is included. *See, e.g.*, *Baldwin v. City of Greensboro*, 714 F.3d 828, 839 n.7, 840 (4th Cir. 2013); *Paynter v. Chesapeake & O. Ry.*, 60 F.R.D. 153, 157 (W.D. Va. 1973). If the Complaint properly alleged a violation of § 1981 on January 13, 2016, then under Rule 6(a)(1) it would have been timely filed on January 13, 2020.

However, Ms. Abram's claims regarding Aerotek's conduct prior to January 13, 2016, are time-barred. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208 (4th Cir. 2016), is instructive. There, the Fourth Circuit stated that in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116–17 (2002), the Supreme Court "held that a time-barred discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period. . . . *Morgan* thus establishes that the continuing-violation doctrine cannot be used to pursue claims challenging time-barred discrete acts." *Guessous*, 828 F.3d at 222. Accordingly, to the extent that plaintiff's claims are based on the denial of employment or retaliation that preceded January 13, 2016, the clock for such claims expired before January 13, 2020, when suit was filed.

Therefore, all counts are subject to dismissal to the extent that are predicated upon allegations of conduct that preceded January 13, 2016.

Count 3, which alleges retaliation, does not state that a retaliatory act was committed on January 13, 2020.  *See* ECF 3, ¶¶ 75, 79.  As noted, the Count does not identify any particular date on which an allegedly retaliatory act was committed.  *See id.* ¶¶ 67-79.  Thus, the whole of Ms. Abram's retaliation claim is untimely.  Even if this were not so, the claim would nevertheless fail on the merits.[9]

I turn to the issue of whether plaintiff's claim arising out of Aerotek's allegedly unlawful conduct on January 13, 2016, survives dismissal under Rule 12(b)(6).

## C.

Aerotek argues, in the alternative: "Plaintiff's Complaint fails to state sufficient facts to state a timely claim under § 1981."  ECF 17 at 3.  According to defendant, "the only specific allegations in the Complaint relate to events in 2015," and the Complaint's lone reference to January 13, 2016, regarding the denial of employment opportunities, is "vague and conclusory[.]" *Id.* at 2.  Accordingly, defendant posits,

## 1.

The analysis under § 1981 tracks that of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*  *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); *see also Love-Lane v. Martin*, 355 F.3d 766, 786 (4th

---

[9] At most, Ms. Abrams alleges that she lodged multiple internal complaints regarding the denials of employment and particular Aerotek employees involved in those denials. *Id.* ¶¶ 73, 75-79.  She also alleges that her complaints were received and investigated by other Aerotek employees.  *Id.* ¶¶ 76-78.  However, all that plaintiff avers regarding retaliation is the following bare-bones claim: "Defendant adverse action retaliation for Plaintiff opposing discrimination." That claim is nothing more than a "bald accusation[] or mere speculation," which cannot survive review under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.

Cir. 2004) (stating that the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), developed for Title VII, has been applied to § 1981 claims).

Where a plaintiff alleges employment discrimination under Title VII, the plaintiff bears the burden of proving her claim by a preponderance of the evidence. In general, there are "two avenues" by which a plaintiff may prove intentional employment discrimination at trial. Although the methods of proof pertain to trial, these two avenues inform a court's evaluation of a motion to dismiss or for summary judgment. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (recognizing that "a Title VII plaintiff may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas Corp*"); *Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 160 (4th Cir. 2014) (stating that a plaintiff asserting racial discrimination "may avoid summary judgment by proceeding under the burden-shifting framework established in *McDonnell Douglas*"); *see also Thomas v. Delmarva Power & Light Co.*, 715 F. App'x 301, 302 (4th Cir. 2018) (per curiam); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

The plaintiff's first avenue is to offer "'direct or indirect'" evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997). The plaintiff's second avenue is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 569 U.S. 206, 228-29 (2015) (construing the Pregnancy Discrimination Act); *Guessous*, 828 F.3d at 216 (discussing the *McDonnell Douglas* framework).

The *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish

an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Notably, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Under the *McDonnell Douglas* approach, the "'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

If the plaintiff chooses to proceed *at trial* under the *McDonnell Douglas* approach, the plaintiff must first establish a "prima facie case of discrimination." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010); *see Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017). Although the precise formulation of the required prima facie showing will vary in "different factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff is generally required to show that the employer took adverse action against an applicant "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.

If a plaintiff establishes a prima facie case of unlawful discrimination, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action. *Hoyle*, 650 F.3d at 336; *see Reeves*, 530 U.S. at 142; *Hurst v. District of Columbia*, 681 F. App'x 186, 189-90 (4th Cir. 2017) (per curiam). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the

*McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11.  The plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256; *see also Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trs. of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

Conversely, if the defendant does not submit evidence of a legitimate basis for its actions, the factfinder may "infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978). And, if the defendant fails to meet the burden of producing "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," then "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr.*, 509 U.S. at 509 (emphasis in original).  This is because a legal presumption of intentional discrimination has been established. *Id.* at 510 n.3; *see Burdine*, 450 U.S. at 255 n.8 ("[T]he allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination.").

As noted, these two approaches establish the common methods by which a plaintiff may prove intentional employment discrimination *at trial*. *See Burns*, 96 F.3d at 731.  At the motion

to dismiss stage, however, a plaintiff need not establish a prima facie case of discrimination under *McDonell Douglas*. In *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Supreme Court explained that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." The Court stated that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Thus, the Court said: "[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . ." *Id.* at 515; *see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1162 (2016).

However, as the Second Circuit has observed, the Supreme Court's holding in *Swierkiewicz* is arguably in tension with the Court's subsequent rulings in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). On the one hand, "[r]eading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent." *Id.* at 309. On the other hand, in *Twombly*, the Court said that a plaintiff must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. And, in *Iqbal*, the Court clarified that the heightened pleading standard of Twombly is applicable in "'all civil actions' . . . ." *Iqbal*, 556 U.S. at 684.

In *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017), the Fourth Circuit indicated that although a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," the "pleading standard established in *Iqbal* and *Twombly* applies[.]" Thus, the question at the motion to dismiss stage is whether the plaintiff has stated "a plausible claim for relief . . . ." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*,

CCB-15-1451, 2016 WL 125597, at *4 (D. Md. Jan. 12, 2016).

## 2.

Plaintiff alleges that in being denied an employment opportunity on January 13, 2016, she was subject to disparate treatment and discrimination on the basis of race and national origin, in violation of § 1981. As noted, defendant asserts that plaintiff has failed plausibly to state a claim.

Defendant is on firm footing. The Complaint fails to allege sufficient "well-pleaded facts" regarding Aerotek's discriminatory conduct on January 13, 2016, so as to state a claim under § 1981. *Iqbal*, 556 U.S. at 679.

To establish a prima facie case of discriminatory failure to hire, under Title VII or § 1981, a plaintiff "must prove that (1) [s]he is a member of a protected class; (2) [s]he applied for the position; (3) [s]he was qualified for the position; and (4) [her] application was rejected 'under circumstances that give rise to an inference of unlawful discrimination.'" *Byers v. Alamance Cty.*, 633 F. App'x 135, 136 (4th Cir. 2016) (per curiam) (quoting *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir.2005)). As noted, although a plaintiff "need not . . . establish a prima facie case of race-based discrimination to survive a motion to dismiss," she must still satisfy the pleading standard established in *Twombly*, 550 U.S. at 569-70 and *Iqbal*, 556 U.S. at 678-84. *Woods*, 855 F.3d at 648.

The Fourth Circuit's decision in *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582 (4th Cir. 2015), is instructive on the application of that standard. There, the plaintiff, McCleary-Evans, brought failure-to-hire claims against the Maryland Department of Transportation, alleging discrimination on the basis of race and sex. As the *McCleary-Evans* Court noted, the claims "relie[d] essentially on two paragraphs of [plaintiff's] complaint." *Id.* at 583. In essence, in those paragraphs McCleary-Evans, an African-American

woman, alleged that two employees who reviewed her application "predetermined" that they would select a "White" candidate and "overlooked the African American candidates." *Id.* at 583-84. The Fourth Circuit concluded that McCleary-Evans did not plausibly state a claim under Title VII. In particular, the Court reasoned that the plaintiff "alleged no factual basis . . . to support the alleged conclusion." *Id.* at 586. Accordingly, the complaint did not "support a *reasonable inference* that the decisionmakers were motivated by bias." *Id.* (emphasis in original).

Here, the Complaint is even thinner than that in *McCleary-Evans*. With respect to the key date of January 13, 2016, the Complaint states only that "Defendant denied Plaintiff finance and other positions job employment opportunities from 3.25.15 until 1.13.16." ECF 3, ¶ 50. This allegation does not identify the position for which plaintiff applied or the qualifications for that position. Nor does plaintiff describe the communication or interaction that she had with the relevant decisionmakers, or allege anything about the individual selected for the job, or even if anyone was hired. Nor are there any facts that support the conclusion that the hiring decision was based on race. The Complaint does not furnish the "who, what, where, when, and why" of the claim regarding January 13, 2016.

Boiled down, all Ms. Abram claims regarding the date in question is that she was denied a job placement. As with the claims in *McCleary-Evans*, this assertion is too conclusory to permit a reasonable inference of discrimination. *See McCleary*-Evans, 780 F.3d at 585 (citing *Iqbal*, 556 U.S. 662, 678-79) (concluding that "'naked' allegations" of discrimination without "factual basis" were "simply too conclusory.") And, as noted, "the court cannot ignore a clear failure to allege facts that support a viable claim[,]" even when analyzing the complaint of a self-represented litigant. *Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6.

Even if Ms. Abrams had alleged more, so as to state a colorable claim of discrimination on the basis of race, the claim of discrimination on the basis of national origin would likely still fall. Plaintiff does not distinguish her asserted national origin from her race in any way. The theory of the national origin that plaintiff appears to advance is that her education at a historically black institution of higher education "denote[s] association with the race black or African Americans or black culture and African American traditions." ECF 3, ¶ 59.

To be sure, § 1981 permits claims for discrimination based on national origin, so long as they are accompanied by allegations of race-based discrimination. *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 157, 162-63 (4th Cir. 2018) (collecting cases and concluding that evidence "showing that [plaintiff] was discriminated against for being 'African' can fairly support either claim"). Here, however, plaintiff makes no reference to her nation (or continent) of origin, and articulates her national origin only in terms of her race. Thus, plaintiff does not state a claim for discrimination based on national origin.

Therefore, the portions of plaintiff's claims in Count 1 and Count 2 that are not time-barred are nevertheless subject to dismissal, *without prejudice*. However, plaintiff will be provided the opportunity to cure her deficiencies.

### IV.    Conclusion

For the reasons stated above, I shall grant the Motion (ECF 10). However, plaintiff may file an amended complaint by October 23, 2020. If she fails to do so, I will direct the Clerk to close the case. An Order follows, consistent with this Memorandum Opinion.

Date: September 23, 2020                                     /s/
                                                  Ellen Lipton Hollander
                                                   United States District Judge